IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-1981

PHILLIP ROMERO,

    Plaintiff,

v.

WELD COUNTY SHERIFF'S OFFICE;
ARMOR CORRECTIONAL HEALTH SERVICES, INC.;
DUSTIN OWENS, RN;
KATIE GIROUX, RN; and
DEPUTY Z. POULSEN.

    Defendants.

---

Complaint and Jury Demand

---

Plaintiff, Phillip Romero ("Mr. Romero"), by and through his *pro bono* counsel, Dormer Harpring, LLC, for his Complaint and Jury Demand against Defendants Weld County Sheriff's Office ("WCSO"); Armor Correctional Health Services, Inc. ("Armor"); Dustin Owens, RN ("Owens"); Katie Giroux, RN ("Giroux"); and Deputy Z. Poulsen ("Poulsen"), states as follows:

## GENERAL ALLEGATIONS

1.    This case concerns the injuries experienced by Plaintiff Phillip Romero because of Defendants' failures to uphold his constitutional right to medical care and

accommodate his disabilities by allowing him to use a cane or a walker in the Weld County Jail.

2. Mr. Romero suffers from gait problems, dizziness, and chronic pain as a result of multiple injuries to his legs dating back to 2009.

3. Mr. Romero's injuries, surgeries, limp, and limited mobility in his knees, ankle, and foot would all be obvious to a layperson who observed Mr. Romero over a period of days or weeks.

4. Even when Mr. Romero has access to a cane or walker, these problems wax and wane unpredictably. At times, the he can walk fairly well without assistance, but at other times, he cannot walk without a cane or walker because of the pain or because of balance issues.

5. When Mr. Romero does not have access to a cane or walker, he is sometimes at increased risk of falling, he sometimes has decreased mobility, and his pain and the musculoskeletal system conditions in his legs gradually increase in severity over time.

6. Mr. Romero and his healthcare providers have never claimed that this means Mr. Romero needs a mobility aid like a cane or walker all of the time – only that he needs to be issued one to carry with him and use as needed.

7. To help Mr. Romero manage these problems, Mr. Romero has been issued a cane by medical staff at facilities run by both the Colorado Department of Corrections and the Weld County Sheriff's Office at least since 2016.

8. Mr. Romero entered the custody of Defendant WCSO at the Weld County Jail for pre-trial detention on April 12, 2018. As relevant to this Complaint, Mr. Romero's rights were violated by each of the following, each of them acting under color of state law, while Mr. Romero was at the Weld County Jail:

    a. Defendant WCSO, a recipient of federal funds, a direct state government instrumentality, and the entity responsible for setting and ensuring compliance with policies regarding all aspects of the operation of the Weld County Jail at the time of all events giving rise to this litigation;

    b. Defendant Armor, a recipient of federal funds, a state government instrumentality by virtue of accepting a delegation of state responsibilities, and the entity responsible for setting and ensuring compliance with policies regarding the provision of healthcare services to inmates at the Weld County Jail at the time of all events giving rise to this litigation;

    c. Sgt. Joshua Todd, a sergeant employed by Defendant WCSO who has no medical expertise and was sued by Mr. Romero in a separate case;

    d. Travis Polk, a nurse practitioner employed by Defendant Armor who is qualified to conduct history and physical examinations of and prescribe medication or treatment to patients like Mr. Romero and was sued by Mr. Romero in a separate case;

e. Michelle Klaus, a medical doctor who is qualified to conduct history and physical examinations of and prescribe medication or treatment to patients like Mr. Romero and was sued by Mr. Romero in a separate case;

f. Defendant Owens, Defendant WCSO's Health Services Administrator, who, upon information and belief, had Defendant WCSO's final policymaking authority on issues involving the provision of health services to jail inmates but is not qualified to practice medicine without supervision by a medical doctor or other supervising provider;

g. Defendant Giroux, a registered nurse employed by Defendant Armor who is not qualified to practice medicine without supervision by a medical doctor or other supervising provider; and

h. Defendant Poulsen, a deputy employed by Defendant WCSO who has no medical expertise.

9. On April 15, 2018, Mr. Romero was given a medical restriction stating that he was approved to have access to a cane for 365 days.

10. This restriction was given based on Travis Polk's objective medical assessment and because Mr. Romero's limp was obvious to Defendant WCSO's lay staff.

11. On or around May 15, 2018, Sgt. Joshua Todd sent an e-mail or other written communication to Travis Polk ordering the removal of Mr. Romero's medical restriction giving him access to a cane.

12. On or around the same day, Travis Polk followed Sgt. Joshua Todd's order to take away Mr. Romero's cane access medical restriction, contradicting Travis Polk's own valid medical assessment. He did so without re-examining Mr. Romero or discussing the issue with him. Instead, he manufactured a pretext by cherry-picking a single video clip of Mr. Romero trying to walk through the jail passages while holding a set of papers and having an involved conversation. Even in this video, Mr. Romero can be seen using his cane and walking with slight limp and his left foot turned obviously outward.

13. With Mr. Romero no longer having any medical restriction allowing him access to a cane, Sgt. Joshua Todd took his cane away on or around May 20, 2018.

14. When Travis Polk finally saw Mr. Romero on May 28, 2018, he told Mr. Romero that, even with Mr. Romero's need, he could not go against Sgt. Joshua Todd's written order to confiscate Mr. Romero's cane. He wrote that he "would consider allowing [Mr. Romero] a walker for use," but did not tell Mr. Romero this and did not create a new medical restriction requiring that Mr. Romero be allowed access to a walker.

15. Meanwhile, Sgt. Joshua Todd failed to document his order to remove Mr. Romero's medical restriction, instead claiming or implying in various records that the decision was prompted solely by Mr. Romero's healthcare providers.

16. Mr. Romero followed Defendant WCSO's administrative grievance process in relation to the confiscation of his cane, which were the only administrative remedies available to Mr. Romero. He filed his Step 1 grievance on May 16, 2018, and received a response on May 16, 2018. He filed his Step 2 grievance on May 29, 2018, and received a response on June 15, 2018. He filed his Step 3 grievance on June 17, 2018, and received a response on June 25, 2018. He filed his Step 4 grievance on July 22, 2018, and received a response on July 31, 2018.

17. Mr. Romero was not given any medical device to assist him with walking until June 21, 2018. During this time, his feet swelled, his pain increased, he fell or came close to falling, and he continuously asked for medical visits to reassess his access to a cane or other walking aid.

18. On June 21, 2018, one of Mr. Romero's healthcare providers finally entered a new medical restriction requiring Defendant WCSO to allow him access to a walker. The restriction was entered by Marcus Oginsky, M.D., and it was based on a full history and physical examination of Mr. Romero and objective findings suggesting gait instability (*e.g.*, a positive Rhomberg sign, which tests for a patient's ability to balance). As with the cane, none of Mr. Romero's healthcare providers have claimed that he would need to use a walker 100% of the time.

19. On June 22, 2018, Defendant Owens gave a general order to "DISCONTINUE ORDERS FOR MEDICAL EQUIPMENT" in response to seeing that Mr. Romero had been given a walker. Defendant Owens was not one of Mr. Romero's healthcare providers and did not see or examine Mr. Romero before giving this order.

20. Upon information and belief, Defendant Owens also entered the words "NO MEDICAL EQUIPMENT ALLOWED" into the "Allergies" section of Mr. Romero's medical chart.

21. Upon information and belief, the "Allergies" section of a patient's chart is designed within Defendant Armor's electronic medical record system to be obvious to the healthcare provider at every patient visit in order to protect the patient's safety. Upon information and belief, Defendant Owens used it improperly with this function in mind to give his orders more visibility and more force.

22. On the morning of July 8, 2018, Defendant Poulsen saw Mr. Romero carry his food tray without using his walker because Mr. Romero could not do both at once and because Mr. Romero was having one of his good days from a medical perspective. Defendant Poulsen called Defendant Giroux and ordered her to confiscate Mr. Romero's walker.

23. Defendant Giroux, who is a registered nurse, followed Defendant Poulsen's orders instead of consulting a supervising healthcare provider (*e.g.*, Dr. Oginsky, the medical doctor who prescribed the walker).

24. During lunch that day, Mr. Romero's walker was taken, and it was not replaced with any other walking aid. Once again, over time, Mr. Romero's feet swelled, his pain increased, he fell or came close to falling, and he continuously asked for medical visits to reassess his access to a cane or walker.

25. On or around July 26, 2018, Mr. Romero saw Michelle Klaus and asked her to prescribe a walker. But Defendant Owens was a step ahead of Mr. Romero. In the "Appointment Description," another highly-visible part of Defendant Armor's electronic medical record system, Defendant Owens ordered the entry of the following words: "PER DUSTIN THE PROVIDER WHO SEES THIS INMATE NEEDS TO SEE DUSTIN FIRST BEFORE DOING ANYTHING!!!!"

26. Michelle Klaus did not re-examine Mr. Romero or make any attempt to exercise her independent clinical judgment. Instead, she told Mr. Romero her hands were tied by the orders already given and that she would not disobey them. She refused to write a prescription for any assistive device solely because that would go against the orders of one or more other Defendants.

27. Over the following year and a half, Mr. Romero made multiple requests for help with his knee, ankle, and foot problems as each of these increased in severity. In August of 2019, another healthcare provider wrote that "he would benefit from a walker, however, with his previous issues with assistive devices, this has not been cleared by [Defendant Owens] or security." During all relevant times, however, Defendant Owens knew about the possibility of letting Mr. Romero have a cane or

8

walker and simply putting him on a medical hold to account for the alleged security risks.

28. Mr. Romero followed Defendant WCSO's administrative grievance process in relation to the confiscation of his walker, which were the only administrative remedies available to Mr. Romero. He filed his Step 1 grievance on July 29, 2018, and received a response on July 20, 2018. He filed his Step 2 grievance on August 5, 2018, and received a response on August 7, 2018. He filed his Step 3 grievance on August 16, 2018, and received a response on August 29, 2018. He filed his Step 4 grievance on September 19, 2018, and received a response on the same day. This process did not yield any results. Mr. Romero was consistently directed back to his healthcare providers, obfuscating the fact that the true order to keep him from having access to any walking aid came from Defendant Owens on behalf of Defendant WCSO.

29. For their part, Defendant Armor's employees who were employed as healthcare providers at the Weld County Jail would consistently allow security staff and Defendant WCSO policymakers to interfere with their medical care of Mr. Romero. Upon information and belief, Armor created policies, procedures, and standard or routine practices through its training and supervision of its employees that it knew would ensure this would be the case.

30. As a direct and reasonably foreseeable result of the Defendants' months-long refusal to give Mr. Romero access to a cane, walker, or other walking aid, the

condition of his knees, ankle, and foot have become significantly worse, which in turn caused him to need to use a cane more often, have difficulty participating in recreation, and require additional and more invasive medical treatment and sustain other economic and non-economic damages, all of which will probably continue into the future.

31. This action arises under the Constitution and laws of the United States and the State of Colorado and is brought under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, the Fourteenth Amendment of the United States Constitution through 42 U.S.C. § 1983, and Article II, Sections 20 and 25, of the Colorado Constitution through C.R.S. § 13-21-131. This Court has jurisdiction under 28 U.S.C. § 1331. Jurisdiction supporting Mr. Romero's claim for attorneys' fees and costs is conferred by 42 U.S.C. § 1988, 42 U.S.C. § 12205, 29 U.S.C. § 794a, and C.R.S. § 13-21-131(3).

32. Venue is proper within this District under 28 U.S.C. § 1391(b). All of the events alleged in this Third Amended Complaint occurred within the jurisdiction of the United States District Court for the District of Colorado. Defendant WCSO is located in this District, and all of the remaining Defendants conducted business within this District during the time of the events giving rise to this litigation.

## FIRST CLAIM FOR RELIEF
## 42 U.S.C. § 12101
## Americans with Disabilities Act – Denial of Accommodation
## (Against Defendants WCSO and Armor)

33. Mr. Romero incorporates by reference all other paragraphs of this Complaint as though set forth in their entirety hereunder.

34. The Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and specifically 42 U.S.C. §§ 12131-12134, prohibits discrimination in public services on the basis of disability. 42 U.S.C. § 12132 provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

35. The ADA defines a "public entity" to include any state or local government or any department, agency, special purpose district, or other instrumentality of a State or local government, 42 U.S.C. § 12131(1). Defendants WCSO and Armor are both "public entit[ies]" within the meaning of the ADA.

36. Mr. Romero had a physical impairment that substantially limited one or more of his major like activities, and he was therefore an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102(2).

37. Mr. Romero, with or without reasonable modifications to rules, policies or practices, met the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by the Defendant.

11

38. Mr. Romero was a "qualified individual with disabilities" within the meaning of the ADA, 42 U.S.C. § 12131(2).

39. The Defendant excluded Mr. Romero from participation in its services, programs, and activities, and denied him the rights and benefits accorded to other prisoners and detainees, solely by reason of his disability and in violation of the ADA. In addition, Defendant has violated the ADA by intentionally failing or refusing to provide reasonable accommodations and modifications to policies, practices and procedures to Mr. Romero.

40. The Defendant has willfully disregarded its duties under the ADA and has knowingly allowed unlawful conditions and practices to persist at the Weld County Jail.

41. As a direct and proximate result of the acts, omissions, and violations alleged above, Mr. Romero has suffered damages, injuries, pain and suffering, inconvenience, emotional distress, impairment of quality of life, past and future economic losses, including reasonable and necessary medical and other expenses.

**SECOND CLAIM FOR RELIEF**
**29 U.S.C. § 794(a)**
**Section 504 of the Rehabilitation Act of 1973 – Disability Discrimination**
**(Against Defendants WCSO and Armor)**

42. Mr. Romero incorporates by reference all other paragraphs of this Complaint as though set forth in their entirety hereunder.

43. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), provides in pertinent part:

12

> No otherwise qualified individual with a disability in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

44. Defendant has discriminated against Mr. Romero on the basis of disability in violation of 29 U.S.C. § 794(a). Such discrimination includes but is not limited to failure to provide physical accommodations including a cane or a walker.

45. Defendant has acted with deliberate indifference to the strong likelihood that failure to provide physical accommodations including a cane or walker would likely result in a violation of Mr. Romero's federally protected rights.

46. Mr. Romero was and is an individual with a disability within the meaning of the Rehabilitation Act of 1973.

47. Mr. Romero was qualified to participate in the services, programs, activities, and benefits provided to prisoners and detainees at the Weld County Jail within the meaning of the Rehabilitation Act of 1973.

48. Defendant receives and benefits from federal financial assistance as that term is used in 29 U.S.C. § 794(a).

49. Defendant denied Mr. Romero access to programs, benefits, and services provided to other prisoners and detainees at the Weld County Jail solely on the basis of his disability and in which he was qualified to participate, thereby violating the Rehabilitation Act of 1973.

50. The Defendant's conduct toward Mr. Romero, including but not limited to its refusal to accommodate or assist him, directly and proximately caused his physical injuries.

51. As a direct and proximate result of the acts, omissions, and violations alleged above, Mr. Romero has suffered damages, injuries, pain and suffering, inconvenience, emotional distress, impairment of quality of life, past and future economic losses, including reasonable and necessary medical and other expenses.

52. Mr. Romero has been injured and aggrieved by and will continue to be injured and aggrieved by the Defendant's discrimination.

### THIRD CLAIM FOR RELIEF
**42 U.S.C. § 1983**
**Fourteenth Amendment – Deliberate Indifference – Denial of Accommodation**
**(Against All Defendants)**

53. Mr. Romero incorporates by reference all other paragraphs of this Complaint as though set forth in their entirety hereunder.

54. 42 U.S.C. § 1983 provides a remedy for constitutional violations and violations of federal statutes, where the violations are committed under color of State law.

55. Each individual Defendant acted in a deliberate and reckless disregard for the serious medical needs of Mr. Romero, constituting willful violations of the Fourteenth Amendment to the Constitution of the United States.

56. Each entity Defendant created official policies and customs and practices that were the moving force behind these violations of Mr. Romero's constitutional rights. Mr. Romero's rights were not violated just once; the individual The entity Defendants instead showed a consistent pattern of healthcare providers withholding medical care on the orders of security staff through affirmative training or through a lack of training that amounted to deliberate indifference to the rights of Mr. Romero and those like him.

57. Defendants herein have engaged in discriminatory acts and practices constituting willful violations of the Rehabilitation Act of 1973 and the Americans with Disabilities Act.

58. Defendants were personally involved in the alleged constitutional and statutory violations in that each of them: (1) directly participated in the infraction; (2) failed to remedy the wrong after learning of a violation through a report or appeal; (3) created a policy or custom under which unconstitutional and unlawful practices occurred; (4) allowed such a policy or custom to continue; and/or (5) was deliberately and recklessly indifferent in managing subordinates who caused the unlawful conditions and events.

59. Mr. Romero, as a result of the Defendants' mistreatment, has suffered pain, anxiety, and humiliation as a result of the Defendants' deliberate indifference to his federally protected rights, physical safety, and mental wellbeing.

60. As a direct and proximate result of the acts, omissions, and violations alleged above, Mr. Romero has suffered damages, injuries, pain and suffering, inconvenience, emotional distress, impairment of quality of life, past and future economic losses, including reasonable and necessary medical and other expenses.

**FOURTH CLAIM FOR RELIEF**
**C.R.S. § 13-21-131**
**Article II, Sections 20 and 25, of the Colorado Constitution – Deliberate Indifference – Denial of Accommodation**
**(Against Defendant Poulsen)**

61. Mr. Romero incorporates by reference all other paragraphs of this Complaint as though set forth in their entirety hereunder.

62. C.R.S. § 13-21-131 provides a remedy for the deprivation by any peace officer of any individual rights that create binding obligations on government actors secured by the bill of rights, article II of the Colorado state constitution.

63. Defendant is a peace officer, as defined in C.R.S. § 24-31-901(3).

64. Defendant, under color of law, caused Mr. Romero to be subjected to a deprivation of his right to due process and his right to remain free from cruel and unusual punishments by, among other things, acting with a deliberate and reckless disregard for the serious medical needs of Mr. Romero.

65. As a direct and proximate result of the acts, omissions, and violations alleged above, Mr. Romero has suffered damages, injuries, pain and suffering, inconvenience, emotional distress, impairment of quality of life, past and future economic losses, including reasonable and necessary medical and other expenses.

## **JURY DEMAND**

66.     Mr. Romero demands a trial by jury for all of his claims.

WHEREFORE, Plaintiff, Phillip Romero, requests that judgment be entered in his favor and against Defendants Weld County Sheriff's Office; Armor Correctional Health Services, Inc.; Dustin Owens, RN; Katie Giroux, RN; and Deputy Z. Poulsen, each individually and jointly and severally, for all available relief, including without limitation a declaration that Defendants have violated Plaintiff's rights under the above-referenced statutory and constitutional provisions, equitable relief including changes to Defendants' policies concerning disability accommodations as appropriate, economic damages, non-economic damages, punitive and/or liquidated damages for all claims allowed by law, pre-judgment and post-judgment interest, a tax offset for any damages award, costs, attorney's fees, and such other relief as this Court deems proper.

RESPECTFULLY SUBMITTED at Denver, Colorado, this 7th day of July, 2020.

*s/ Sean M. Dormer*
Sean M. Dormer, Colo. Atty. Reg. 44962
K.C. Harpring, Colo. Atty. Reg. 47760
DORMER HARPRING, LLC
3457 Ringsby Court, Unit 110
Denver, CO  80216
Telephone: (303) 756-3812
Facsimile: (303) 477-7400
E-mail:     smd@denvertrial.com
            kch@denvertrial.com
*Attorneys for Plaintiff Phillip Romero*